Berna Kahn TEE, Beverly Yager, Danny Ciccariello, Judith A. Murphy, Frank Pago, and Jan Chase, on behalf of themselves and all others similarly situated

v.

UAL CORPORATION and
United Airlines, Inc.

Civ. No. 1:95–CV–0054–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 1, 1995.

Gregory J. Digel, Deborah Cone Craytor, Branch Pike & Ganz, Atlanta, GA, Lewis B. Gardner, Herman Roof & Gardner, Atlanta, GA, Lawrence J. McGuinness, Stephen L. Roof, Jeffrey M. Herman, Herman Roof Henry & Gordon, Miami, FL, pro hac vice, Sheri Lee Bocher, Office of Sheri L. Bocher, Atlanta, GA, for plaintiff.

William Henry Boice, Jeffrey Alan Van-Detta, Kilpatrick & Cody, Atlanta, GA, Robert A. Siegel, Tom A. Jerman, O'Melveny & Myers, Los Angeles, CA, pro hac vice, for defendants.

**1574**

### ORDER

ORINDA D. EVANS, District Judge.

This action under Sections 2, Third and 2, Fourth of the Railway Labor Act (the "RLA"), 45 U.S.C. § 152 (Third), (Fourth), is before the court on Defendants' Motion to Dismiss for failure to state a claim on which relief can be granted. Because the court believes it can adequately decide this matter based on the pleadings and briefs of the parties, Plaintiffs' motion for oral argument is denied.

The court treats the following assertions in Plaintiffs' complaint as true: Plaintiffs and putative class members (collectively "Plaintiffs") are United Airlines ("United") employees who qualify as "employees" under the RLA, Section 1, Fifth, 45 U.S.C. § 151 (Fifth). The various crafts and classes of employees at United that Plaintiffs represent for purposes of this lawsuit, collectively known as salaried and management employees ("SAM"), are not members of a collective bargaining unit, despite organizing efforts by United's unions. One union at United, the International Association of Machinists and Aerospace Workers ("IAM"), attempted to organize this group of employees as recently as 1991.

In January 1993, United implemented a drastic cost reduction program and asked its three unions for wage, benefit and work rule concessions. This request was rejected by the IAM, the Association of Flight Attendants ("AFA"), and the Airline Pilots Association, International ("ALPA"). In the spring of 1993, United invited its unions to instead consider a "shared solution" to the problem. (Compl. ¶ 29). In response, they proposed a restructuring plan predicated upon "employee investment" by the unions and the non-unionized employees. United offered a counter-proposal on August 25, 1993, that included a condition that "there would be no other wage rate, per diem, allowance/premium or benefit increases during the investment period (other than step, longevity, or comparable increases for non-contract [SAM] employees

or status/promotional increases)." (Compl. ¶ 31)

Although the AFA dropped out of the negotiations, United continued discussions with the IAM and ALPA, but without any SAM representative. At one point, Stephen M. Wolf, United's Chairman of the Board and Chief Executive Officer, announced that he would represent the interests of the non-unionized employees. (Compl. ¶ 32)

A formal proposal was made on November 11, 1993, that provided that ALPA, the IAM and SAM employees would make wage concessions. An Agreement in Principle was executed on December 22, 1993, by United, ALPA, and the IAM in the form of a letter from the two unions to United's Board of Directors. This included an agreement to execute new collective bargaining agreements reflecting the newly negotiated wage rates, benefits and other terms of employment, and recited United's agreement to "establish appropriate terms for the salaried and management employees as described in Exhibit E–3 [to the Agreement]." (Compl. ¶ 34).

The final agreement, known as the Initial Plan of Recapitalization ("the Plan"), was executed by the Board on March 25, 1994. The nature of the SAM employee concession package was not finalized until this meeting. The Plan was amended in immaterial respects on June 2, 1994, before being approved by United's stockholders on July 12, 1994. United implemented the Plan immediately, negotiating wage and benefit reductions and work rule changes that adversely affected the terms and conditions of Plaintiffs' employment. These terms are binding on United for approximately five years.[1]

Plaintiffs allege that, in negotiating with the IAM and ALPA concerning the terms and conditions of SAM's employment, United violated Section 2, Third and Section 2, Fourth of the RLA. Defendants now move to dismiss this action on the grounds that 1) it is barred by the statute of limitations; and 2) Plaintiffs have failed to state a claim upon which relief can be granted. The court finds

---

**1.** If the flight attendants choose to participate in the program, these covenants are binding for a slightly reduced period of time.

that it cannot conclude with certainty that this action is untimely based upon the pleadings. Because Plaintiffs' claims fall neither within the explicit language of the RLA nor its parameters as interpreted by the courts, however, the court agrees that Plaintiffs have failed to state a claim on which they can be afforded relief under the law.

## I. Timeliness of Plaintiffs' Complaint

■ The parties agree that the appropriate period of limitation for a claim arising under the RLA is six months as set forth in Section 10(b) of the National Labor Relations Act. *Railway Labor Executives' Ass'n v. Southern Ry. Co*, 860 F.2d 1038 (11th Cir.). The period begins to run "when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir.1986).

■ Courts often look to the law developed under the National Labor Relations Act for guidance in interpreting similar provisions of the RLA. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344 (1969). Applying the same period of limitation to unfair labor practices, the NLRB considers the six month period to begin running only after the party adversely affected receives "clear and unequivocal" notice of the violation of the NLRA. *Leach Corp.*, 312 N.L.R.B. 990, 991, 1993 WL 398485 (1993). Defendants bear the burden of establishing that Plaintiffs received the appropriate notice. *Id.*

■ Defendants argue that Plaintiffs must have known of their cause of action no later than March 25, 1994, the date on which Defendants completed their negotiations with the unions and executed the Plan of Reorganization. Plaintiffs, on the other hand, contend that their claims arose when the Plan was approved and took effect on July 12, 1994. Because Plaintiffs filed suit in January, 1995, Defendants would have to show that Plaintiffs "clearly and unequivocally" were aware by March, 1994, that Defendants were negotiating over Plaintiffs' terms of employment. While the court agrees with De-

fendants that in all likelihood Plaintiffs were or should have been aware of United's activities prior to shareholder approval of the Plan, there is nothing in the pleadings establishing this fact. As such, the court must deny Defendants' motion to dismiss on this ground.

## II. Rule 12(b)(6) Motion

■ "A complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir.1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). "All well-pleaded facts in plaintiff['s] complaint and all reasonable inferences drawn from those facts are taken as true." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992) (citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

■ There is nothing in the plain language of the RLA which provides Plaintiffs with a viable claim based on the pleadings. Section 2, Third of the RLA provides:

[r]epresentatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

■ Nowhere in the pleadings, however, do Plaintiffs allege that United at any time considered the IAM or ALPA to be the "representatives" of SAM or attempted to

deal with them as such.[2] "Representative" is defined under 45 U.S.C. § 151 (Sixth) to mean "any person or persons, labor union, organization, or corporation designated either by a carrier or group of carriers or by its or their employees to act for it or them." *Id.* There is no allegation in the complaint that United recognized ALPA or the IAM as acting for SAM, and in fact, the Plan of Reorganization on which Plaintiffs rely expressly provides that ALPA and the IAM were acting as representatives of the respective employee groups that they are certified to represent.[3]

Similarly, Section 2, Fourth of the RLA provides:

"employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work thereof, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization ..."

Plaintiffs, however, do not allege that the Plan implemented by United prohibits non-union employees from selecting a collective bargaining representative under the RLA.

What Plaintiffs do allege is that the statute creates a right to reject representation, and that a "necessary corollary" of this right is to prohibit the carrier from entering into agreements with other unions that affect the terms and conditions of employment of the non-unionized employees. It seems, therefore, that Plaintiffs concede that their cause of action is not covered by the direct language of the statute and must instead be found through court interpretation of the RLA. An examination of the cases relied on by Plaintiffs, however, reveals that they also provide no legal basis for Plaintiffs' claims.

Plaintiffs rely heavily on *Air Line Pilots' Association International v. UAL Corp,* 874 F.2d 439 (7th Cir.1989), to show that there is legal support for the position that United may not bargain with one union over the terms and conditions of employment of another under the RLA. In that case, ALPA attempted to purchase United by means of a heavily leveraged employee stock ownership plan ("ESOP"). In an attempt to stop them, United and the IAM included a provision in their collective bargaining agreement that if United offered ESOP to any group of unionized employees, it would be required to offer a similar ESOP to every other unionized group of employees. The Seventh Circuit held that in doing so, United had bargained with the IAM over the employment terms of employees represented by ALPA in violation of the RLA. Because the stock was required to be issued in proportion to the amount of wages and benefits each employee group gave up, the "interests that the employees acquire in the ESOP .. will thus be substitutes for wages," i.e. ESOP conditions affected the terms and conditions of employment of other unions.

Plaintiffs' reliance on this case is misplaced. Because United's pilots had designated ALPA as their collective bargaining agent, United had to deal exclusively with ALPA concerning any terms or conditions of the pilot's employment under § 2, First and § 2, Ninth of the RLA. *See UAL Corp.,* 874

---

2. Even if Plaintiffs had alleged that United treated the IAM or ALPA as SAM's representative, the proper forum for redress lies with the National Mediation Board which has exclusive jurisdiction to resolve representation disputes. *See International Bhd. of Teamsters v. Texas Int'l Airlines, Inc.,* 717 F.2d 157 (5th Cir.1983).

3. In their Complaint, Plaintiffs allege the existence of the Plan of Reorganization and quote from it. Defendants' placement of the entire text of this document before the court is proper pursuant to a 12(b) motion given that it is central to Plaintiffs' case. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993).

F.2d at 439. In contrast, SAM is non-union and has no designated representative with whom United must bargain. Thus, the basis for the decision in *UAL Corp.*, Sections 2, First and Ninth of the RLA, are lacking in this case and the decision can provide no grounds for granting Plaintiffs' requested relief.

■ In support of their contention that the RLA forces an employer to deal with non-unionized employees unilaterally, Plaintiffs also cite several cases which conclude that because the RLA requires an employer to deal only with the true representative of the employees, there is a corresponding duty to deal with no other representative. *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 548, 57 S.Ct. 592, 599–600, 81 L.Ed. 789 (1936). This proposition, while undoubtedly true, provides no legal basis for Plaintiffs' claims. Again, because Plaintiffs rejected collective representation, they had no "true representative" with whom United had to deal under the RLA. Plaintiffs have not alleged, moreover, that United treated its unions as representatives of Plaintiffs in negotiating to set the terms and conditions of SAM's employment. On the contrary, United's President stated that he considered himself to be Plaintiff's representative. As such, the unions represented the interests of their membership and United represented both its and its non-unionized employee's interests.

The Plaintiffs maintain that because collective bargaining agreements prevent the employer from negotiating directly with the employees, it must be true that the employer cannot negotiate with the union where the employees have rejected collective bargaining. *See Virginian Ry. Co*, 300 U.S. at 539–40, 57 S.Ct. at 595–96; *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1943). The second proposition, however, does not follow from the first. An employer may not deal directly with employees who are represented by a union because it is prohibited from doing so under the provisions of Section 2, First and 2, Ninth requiring the employer to deal exclusively with the unions. Again, there is no corresponding duty in this case because Plaintiffs have decided not to designate a collective bargaining representative.

■ In short, there simply is no authority for the proposition that the RLA governs a carrier's conduct in setting employment terms for its unrepresented employees. It is clear that §§ 2, Third and Fourth encompass the right to reject collective representation. *Brotherhood of Ry. & S.S. Clerks v. Assoc. for the Benefit of Non–Contract Employees*, 380 U.S. 650, 669 n. 5, 85 S.Ct. 1192, 1202 n. 5, 14 L.Ed.2d 133 (1965); *Russell v. National Mediation Bd.*, 714 F.2d 1332, 1343–44 (5th Cir.1983). The statute does not portend to govern labor relations, however, once employees assert this right.

In *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942), the non-unionized employees asked the employer for a conference to negotiate an agreement concerning working conditions and other related subjects. Subsequent to this request, the employer implemented an accounting and guarantee plan without consulting the union. While the union claimed this violated the first six paragraphs of Section 2 of the RLA, the Court held otherwise.

> Because the carrier was, by the act, placed under the duty to exert every effort to make collective agreements, it does not follow that pending those negotiations, where no collective bargaining agreements are or have been in effect, the carrier cannot exercise its authority to arrange its business relations with its employees in the manner shown in this record. As we have stated … the Railway Labor Act *dealt with collective bargaining agreements only and not with the employment of individuals.*

*Id.* at 402, 62 S.Ct. at 669 (emphasis added).[4]

In *International Brotherhood of Teamsters v. Brotherhood of Railway, Airline &*

---

4. The Eleventh Circuit in *International Association of Machinists and Aerospace Workers v. Transportes Aereos Mercantiles Pan Americandos,* 924 F.2d 1005 (1991), held that the RLA precluded an employer from making unilateral changes once negotiations toward a collective bargaining agreement had begun. The court found that *Williams* had been limited by *Detroit & Toledo Shore Line Ry. Co. v. United Transportation Union,* 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325

S.S. Clerks, 402 F.2d 196, 202 (D.C.Cir.1968), cert. denied, 393 U.S. 848, 89 S.Ct. 135, 21 L.Ed.2d 119 (1968), the court held that the N.L.R.B. had the implied power under the RLA to decertify unions and represent to the employer that "a particular group of employees has no representative to carry on the negotiations contemplated by the Railway Labor Act." Id. at 202. While this seems to indicate that a court could imply that the RLA governs Plaintiffs' claims, the court in Teamsters concluded that the determination that there is no designated representative would "relegat[e] the carrier and its employees to employment relationships and contracts not presently governed by the Railway Labor Act." Id. (emphasis added).

■ Although United's salaried and management employees apparently consider themselves as a unit for purposes of this litigation, absent a collective bargaining agreement, they remain a collection of individuals governed by individual employment contracts. While Sections 2 Third and Fourth of the RLA are intended to protect the rights of individuals to form unions or reject collective representation, they do not give employees who have chosen to forego collective bargaining the power to assert control over the manner in which the employer determines the terms and conditions of their employment.

Simply put, Plaintiffs have not alleged in the pleadings that United either recognized its unions as the collective representative of Plaintiffs or imposed unsatisfactory terms and conditions on SAM in an effort to influence or coerce these non-unionized employees into unionizing. Only by pleading these facts would Plaintiffs' claims fall within the statutory protection afforded to non-unionized employees under the RLA. Because Plaintiffs' claims have support neither in the actual language of the statute nor its interpretation by the courts, they have failed to state a claim upon which relief can be granted. While the court may sympathize with Plaintiffs that they were not given a seat at

the bargaining table, this does not alter the fact that United was under no obligation to do so absent a decision by SAM to designate a collective bargaining agent.

ACCORDINGLY, Defendants' Motion to Dismiss [5–1] is GRANTED and Plaintiffs' Motion for Oral Argument [20–1] is DENIED.

SO ORDERED.

---

(1969) to apply only in those cases where "there is absolutely no prior history of any collective bargaining or agreement between the parties on any matter." IAM, 924 F.2d at 1008 (quoting

Detroit & Toledo, 396 U.S. at 158, 90 S.Ct. at 303). As this condition applies in this case, the court finds Williams to be relevant precedent.